PRICE, Judge.
This appeal is concerned with the method of determining just compensation for undeveloped acreage owned by a cemetery which was expropriated for highway purposes under the quick taking statute.
The State of Louisiana, Through the Department of Highways (Department) expropriated 11.833 acres in full ownership and 0.126 acres for a drainage servitude from a tract owned by Centuries Memorial Park Association, Inc. (Centuries) in connection with the construction of the 1-220 Inner-loop in Shreveport. The Department deposited the sum of $46,405.00 at the time of the taking, July 26, 1974, as just compensation. Centuries answered the petition for expropriation asking that the amount for just compensation be increased to $660,156.50, and that it be awarded attorney fees.
The trial court awarded Centuries the sum of $272,553.00 ($319,958.00 for the value of the property taken less the $46,405.00 previously deposited) and denied the request for attorney fees. The court also awarded Centuries $10,000.00 for expert witness fees.
The Department has appealed assigning as error the excessiveness of the amount awarded by the trial court for just compensation and for expert witness fees. Centuries has answered the appeal seeking an increase in the amount awarded and reversal of the judgment rejecting its claim for attorney fees.
Centuries began operations in early 1946 as a garden type cemetery operated for profit. It is located on the east side of Mansfield Road and the KCS railroad track in the southern area of Shreveport. The combined acreage owned by Centuries at the time of the taking was 107.18 acres. Approximately 26.25 acres of this tract had been developed and 15,514 of the total burial spaces of 18,898 had been sold through the date of the taking.
*491 The expropriated area was from the undeveloped acreage along the southern boundary of the tract. The drainage servitude affecting 0.126 of an acre was required to maintain local drainage. The taking leaves Centuries with a 0.6 acre remainder on the opposite or south side of the expressway which can no longer be used for cemetery purposes.
The expert real estate appraisers for both parties are in agreement that the best and highest use of the property taken was for cemetery purposes. All of the experts recognized that such a use is very unique, and that the usual methods of appraisal by the market data or cost approaches are inappropriate in this instance. The Department’s appraisers, James C. McNew and A. Byron Core, used a method called “the developmental or anticipated use method” of appraisal which projects the future sales of burial space per year, deducts the expected expense each year, and estimates the present value of this future income stream after providing for cost of capital and developer’s profit.
Centuries’ appraisers, O. L. Jordan and John R. Walker, used the method of appraisal described by them as the income approach utilizing “the discounted cash flow analysis.”
Both methods are basically the same in theory and have been generally accepted as appropriate for appraising such special purpose property as presented here. Although there are no reported cases in this state concerning valuation of cemetery property in condemnation proceedings, we have been referred to cases in other jurisdictions which were concerned with this appraisal problem. See St. Agnes Cemetery v. State, 3 N.Y.2d 37, 163 N.Y.S.2d 655, 143 N.E.2d 377, 62 A.L.R.2d 1161; Mt. Hope Cemetery Association v. State (N.Y.), 11 A.D.2d 303, 203 N.Y.S.2d 415; Cementerio Buxeda v. People of Puerto Rico, 196 F.2d 177; State of Missouri v. Barbeau (Mo.1965), 397 S.W.2d 561; and Department of Transportation v. Bouy, 69 Ill.App.3d 29, 25 Ill.Dec. 499, 386 N.E.2d 1163.
Although the basic method of appraisal of the opposing experts was the same, they reached drastically different results on the estimates of just compensation due the landowner because they differed on whether undeveloped acreage other than the part actually taken should be included in determining the time period required to absorb into the market the number of burial spaces which could be derived from the subject area. The appraisers for Centuries, Jordan and Walker, followed the concept that the 11.833 acres taken would have been the next part of the undeveloped area to have been developed into burial spaces after disposal of the 3,384 spaces remaining in the previously developed cemetery area. They concluded, based on past sales records, it would take place within 5 years, and that it would take approximately 12 years to sell the spaces derived from this area.
McNew and Core were of the opinion the part taken should be considered as an integral part of the total of 45.93 acres of the undeveloped land owned by Centuries which was equally suited for expansion of the existing cemetery to establish an average per acre value for use in calculating the amount of just compensation for the 11.833 acres taken. (They excluded from consideration the 35 acres of undeveloped land lying north and east of the present cemetery and adjacent to the Kingston Road, as it was excess to that needed for cemetery expansion within any reasonable period of time, and it had a best and highest use for residential development. This exclusion is not detrimental to Centuries’ position.) They concluded it would take 72 years to dispose of the burial spaces which would be developed from the entire 45.93 acres using the average yearly rate of sales of spaces as shown by the records of Centuries. The acceptance of this period of time for calculating present value results in a substantially smaller per acre value.
The trial court generally followed the concept projected by Jordan and Walker-that the 11.833 acres taken could be valued as a separate unit from the total undeveloped acreage suitable for future cemetery purposes. The court found it would have *492 been developed within 5 years, except for the uncertainty created by the delay of the Department in defining the actual route the expressway would take. The court then concluded a period of 21 years would be necessary to sell the spaces that could have been derived from the 11.833 acres.
We find the court was in error in this respect, and that the method followed by the Department’s appraisers is in accord with the prevailing jurisprudence.
. .. once the use tract is defined, i. e., it is determined what portion of the parent tract has a highest and best use as commercial property, the average unit value of the use tract may be employed to ascertain the value of the expropriated portion. State, Through Dept. of Hys. v. Hoyt, 284 So.2d 763 (La.1973).
The evidence does not show that the area taken was any better suited for development for burial spaces than any of the other part of the 45.93 acres available for this purpose to Centuries. There had been no affirmative steps taken prior to the expropriation which indicate an intent to select this area over any of the other available acreage when the need arose for further expansion.
The other factor which caused a substantial variance in estimates of value of the parties’ experts was the inclusion by the Department’s appraisers of a deduction of 100% for a developer’s profit from the calculated annual cash flow. Such a deduction would be appropriate in valuing raw, undeveloped land with potential for subdivision or cemetery lot development. We do not believe it is proper for land which, although presently undeveloped, is ready for development and is part of an ongoing development such as in the instant case.
... an owner-developer is entitled to recover on the basis of the individual retail value of each lot (less development costs, but not less the developer’s profit) if sold in the ordinary and usual course of business. Of course, as to be noted more fully, this rule applies only where the sale of lots for subdivision purposes is reasonably prospective, and only where the evidence shows that the owner-developer is actually in the process of developing and selling the land as subdivision lots, as compared with merely holding an undeveloped tract for its potential subdivision development. State, Dept. of Hys. v. Terrace Land Co., Inc., 298 So.2d 859 (La.1974).
We also find that this position is in accord with the rule adopted in the leading cases in other jurisdictions confronted with such an appraisal problem. See St. Agnes Cemetery v. State, supra; Mt. Hope Cemetery Association v. State, supra.
The parties each dispute several of the items of income or expense included in the cash flow analysis made by the opposing experts, McNew and Jordan. The trial court accepted and used a combination of the analyses made by these two appraisers with certain modifications in each appraisal to arrive at the appropriate annual cash flow.
The first item in dispute is the inclusion of $8,346.00 of interest earned from the perpetual care fund in the gross annual income included in the Jordan analysis. We find no error in this conclusion of the court as we agree with McNew’s opinion that the increased maintenance expense each year would offset this amount, and it should not be projected as income.
The next item at issue is the reduction ordered by the court in the administrative expense and salaries and wages reflected on McNew’s analysis. The court ordered the reduction in view of the evidence showing that approximately 60% of Centuries’ income was derived from the sale of vaults and grave markers. . The court recognized that Centuries could not recover its loss of profits from sale of these items under the Constitution of 1921, which was in effect at the time of the taking. However, the court was of the opinion the expense of these sales should be considered in allocating expense in the cash flow analysis. These are factual determinations for which much discretion should be accorded the trier of facts. We find no manifest error in the *493 conclusions of the trial court in amending the cash flow analyses, and its resulting finding that the proper adjusted annual cash flow should be $66,359.00.
Although the trial court used the discount factor of 11%, as used in the Jordan analysis, the Department’s expert, McNew, applied an 8% discount factor, and we are of the opinion the landowner is entitled to the most beneficial of the two factors under these circumstances.
To conform to the views expressed herein, we have recalculated the average per acre value of the 45.93 acres as follows:
Annual Cash 72.52 Years Present Worth
Flow Present Worth of 45.93
_ Factor (a) 8% Acres_
$66,359.00 x 12.4529 = $826,362.00
Present Worth Total Number Average Price
of 45.93 of Acres Per Acre
Acres
$826,362.00 - 45.93 = $17,991.77
Therefore using the $17,991.77 per acre price, the 11.833 acres taken had a total present value at the time of the taking of $212,896.61.
The trial court found the 0.6 acre remainder situated on the opposite or south side of the expressway had a value after the taking of $1,000.00. This finding is in accord with the evidence, and this amount should be deducted from the total award.
The remaining issues concern the correctness of the trial court’s award for expert witness fees and the court’s denial of Centuries’ request for attorney fees.
The court fixed the fee of Jordan and Walker, who submitted a joint bill to the landowner, at the sum of $5,437.50 for both appraisers. This is the amount charged the landowner by the experts, and in view of the unique and complex problem confronting these experts and the thoroughness with which they prepared their report, the fee does not appear to be excessive. We do not find any basis for the contention of the Department that it should be reduced because their testimony was not of any assistance to the court in determining just compensation. To the contrary, the trial court partially relied on these experts’ reports in resolving the proper cash flow analysis, and this court has affirmed the trial court’s finding in this respect.
The fee of Robert E. Jones, a civil engineer, was fixed at $4,651.50. He performed substantial work in connection with calculations of estimated burial spaces and other essential data on which the award was determined. We do not find the award excessive.
Centuries contends it should be awarded attorney fees because such are now allowed in condemnation proceedings under the Constitution of 1974 and La.R.S. 48:453(E). The trial court denied the request because it found the taking in this instance took place prior to the effective date (January 1, 1975) of the 1974 Constitution, and therefore the law applicable under the 1921 Constitution was controlling. The trial court correctly held that the rights granted to the landowner under the 1974 Constitution were substantive rights and should not be given retroactive effect. The court properly denied the request for attorney fees.
For the foregoing reasons the judgment is amended to reduce the sum awarded as just compensation to Centuries, and for clarity the judgment is in part recast as follows:
It is ordered that Centuries Memorial Park Association, Inc., have and recover judgment of the State of Louisiana, Department of Transportation and Development, as follows:
For the sum of $211,896.61, subject to a credit for the amount previously deposited by plaintiff and withdrawn by defendant of $46,405.00, together with legal interest thereon from July 26, 1974, until paid.
As amended the judgment is in all other respects affirmed.