STOKER, Judge.
This is an appeal from a judgment of expropriation of certain property belonging to Michael Carriere and his wife, Tammy Bellard Carriere, defendants, in favor of the Town of Church Point, the plaintiff.
The Town of Church Point sought the property in question in connection with a street hard-surfacing project. The trial court granted the taking and expropriation and placed a value on the property to be expropriated at $560.
The Carrieres make six assignments of error:
1) The trial court erred in its determination that the Town of Church Point had negotiated in good faith with respect to the acquiring of property for its right-of-way.
2) The trial court erred in its determination of the value of the property expropriated.
3) The trial court erred in finding that the Carrieres would suffer no damage to their remaining property as a result of this taking.
4) The trial court erred in allowing the deposition of Kirney Thibodeaux to be introduced and received as evidence after timely objection by counsel for the Carrieres on the grounds that none of the situations permitting such introduction in lieu of the presence of the witness were shown to exist.
5) The trial court erred in its refusal to award attorney’s fees to defendants.
6) The trial court erred in casting defendants with costs.
FACTS
The property of defendants being taken consists of a residential lot fronting 104.35 feet on the northwest side of North Street in the Town of Church Point. In order to make an understanding of the facts of this case more intelligible we include as a part of this opinion and labeled as Exhibit 1, a portion of a plat of survey which appears in the record at transcript page 62. We have added to this plat certain data which we understand represent fact.
We have inserted on the plat the name of North Street which runs in a northeast and southwest direction. For convenience and simplicity the parties have referred to this direction as an east-west direction and to the properties along North Street as being north or south of North Street. We will follow the same course of description. From the plat it will be noted that Home Street forms a T-junction with North Street on the east (southeast) side of North Street at a point opposite the plaintiffs residential lot. Property belonging to Vidrine lies east of Home Street along the south side of North Street. Property belonging to the Gianfalas lies west of Home Street along the south side of North Street. Plaintiffs’ property lies on the north side of North Street opposite Home Street and the Vid-rine property.
West of the Carriere property the Town had obtained sufficient right-of-way north of North Street. East of the Carriere property the town had obtained sufficient right-of-way south of North Street. The Town then decided to put a curve in the street to connect the strips of right-of-way. To do this it would have to take a triangular piece of land from either the Carrieres or the Gianfalas, their neighbors on the other side of North Street. After negotiations with both the Carrieres and the Gianfalas, the Town decided to expropriate the property of the Carrieres. The Carriere property to be taken is triangular in shape consisting of a leg 104.35 feet long across the front of the lot on North Street, a leg 15.3 feet long along the west boundary of the Carriere lot and a leg beginning 15.3 feet inside the property on the west side line and stretching 105.47 feet to connect with the east front corner of the Carriere lot. (On Exhibit A, the plat, the lot is shown as Parcel 1 of the Carriere lot with corners marked as A, B and C).
The triangular part of the lot or tract of the Carrieres taken contains 798.28 square feet. In a minute entry the trial court fixed the values of this triangle at $558.80. *988 The trial court thus assigned a value of seventy cents per square foot to the Carri-ere property taken. In its judgment the trial court rounded off its award for the property at an even $560.
We now take up the Carrieres’ assignments of error in the order given above.
GOOD FAITH NEGOTIATION
The first assignment of error, that the court erred in finding that the Town negotiated in good faith, lacks merit. The Carrieres were offered $1,000 for their property. They argue that the Gianfalas across the street were offered twice as much for the same thing. The Carrieres so reason because the Town offered the Gian-falas free blacktop on the North Street side of their property, worth about $2,000, in exchange for the right-of-way. The Town argues that the Gianfala property was worth more since it was a corner lot. The Town further urged that the expropriation would decrease the Gianfala frontage, which would significantly decrease the value of the property. The Carriere property is not a corner lot and the frontage would remain essentially the same after the expropriation.
In response to the offer of $1,000, Mr. Carriere demanded $30,000 for the property. He made no other offer. He had at least two or three meetings with the attorney for the Town of Church Point. At trial he testified that the only bad faith on the part of the Town was that they discussed the offer with his wife rather than with him.
With due respect to the Carrieres' argument that the Town of Church Point offered the Gianfalas twice as much compensation for approximately the same frontage to be taken from them as is to be taken from the Carrieres, we do not think the argument is persuasive. In the first place, the offer was in the form of free paving for all of the Gianfala frontage, not just the one hundred or so feet it might have taken. We do not know what considerations may have entered into such an offer, but more important, we do not know (and have no way of knowing) that the offer to the Gianfalas was a fair offer from the Town’s standpoint. Moreover, the Town may have had a preference for using the Gianfala property for which it was willing to pay more. In any event, the record is clear that the Carriere property was worth seventy cents a square foot, and that is what the trial court awarded the Carrieres. Therefore, the offer of $1,000 to the Carri-eres where the trial court ultimately judicially determined the property to be worth only $560 would seem to indicate good faith negotiations.
We cannot say the trial judge was clearly wrong in finding the Town negotiated in good faith.
VALUATION OF THE PROPERTY
The second assignment of error is that the trial court erred in its valuation of the property expropriated. The Carrieres themselves produced evidence to show that comparable property in the area had an average value of seventy cents per square foot. However, they contend the frontage property is more valuable than the average value of the entire tract; therefore they should receive more than seventy cents per square foot. We disagree. As stated in State through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973),
“Usually, however, there is no market value for a strip taken for highway or other public-servitude purposes. The landowner would not normally sell at any reasonable price the portion cutting his tract off from the highway or (in the case of other servitudes) bisecting it. There is no willing buyer (except the servitude-seeker) for the strip to be taken, normally useless because of its small-depth and its shape for any other purpose than the public servitude.
“For this reason, in holding that the landowner must receive the actual market value of the front strip taken, the courts have valued it at the price per unit (square foot, front foot, acre, etc.) that a willing seller would pay for it at its highest and best use as if the strip taken *989 were part of a marketable front area of the parent tract sold for such highest and best use. As the dissent here in the intermediate court noted, 272 So.2d [768 at] 776 [La.App. 3 Cir.]:
* * A number of the above cited cases, including, originally, Landry, supra, and most recently, Stegemann, supra, stand for the proposition that once the use tract is defined, i.e., it is determined what portion of the parent tract has a highest and best use as commercial property, the average unit value of the use tract may be employed to ascertain the value of the expropriated portion. In such a situation the expropriated portion would be assigned a value which bears the same proportion to the overall value of the use tract as its size bears to the size of the entire use tract.’ ”
No evidence was presented that the tract could be divided and put to different uses. The lot must be considered as a whole. The average value per square foot of the lot determines the value of the property taken. The trial court did not err in awarding seventy cents per square foot to the Carrieres for the property taken.
DAMAGE TO REMAINING PROPERTY
The third assignment of error is that the trial court erred in finding that the Carrieres would suffer no damage to their remaining property as a result of this taking. The Carrieres argue that the diagonal line at the front of their lot produced by the expropriation causes damage to the property. The front of their house is no longer parallel to the street. They also argue that the view from the driveway will be impaired. We do not believe that having a diagonal property line will cause damage to the property. If any impairment of view should result from moving one corner of the Carriere property back 15.3 feet, this same impairment of view must have existed to begin with. We believe that if farther impairment should result, it should be minimal. The trial court did not err.
ADMISSIBILITY OF EXPERT’S DEPOSITION
The fourth assignment of error is that the court erred in allowing the deposition of The Town’s expert witness, Kirney Thibodeaux, to be introduced and received as evidence after timely objection by counsel for the Carrieres. The ground or basis of the objection was that none of the situations in which such introduction is permitted under LSA-C.C.P. art. 1450 in lieu of the presence of the witness were shown to exist. Counsel stipulated at the time the deposition was taken that it is for all purposes.
The Carrieres filed a motion for new trial, which was granted, limited to the taking of Kirney Thibodeaux’s testimony. The trial court, on further consideration, found that its ruling at the trial that the deposition was admissible, was correct, and that no benefit could be gained by retaking that testimony.
In our opinion Article 1450 of the Code of Civil Procedure governs situations in which there is no stipulation as to the use of a deposition. Here, in taking the deposition of Kirney Thibodeaux, the attorneys stipulated as follows: “As allowed under the Rules of the Louisiana Code of Civil Procedure, it is agreed by all parties that this deposition is being taken for all purposes.” This stipulation is ambiguous. Without the introductory clause of the stipulation the “all purposes” provision would seem to permit use of the deposition at trial, saving, of course, any objections from an evidentiary standpoint which would have been valid had the testimony been taken in court as part of the trial.
Kirney Thibodeaux was called at the instance of the Town of Church Point as its expert real estate appraiser. Therefore, the deposition would hardly have been taken for discovery purposes, and the Carri-eres’ attorney surely must have understood that the Town was taking the deposition for probable use at the trial in lieu of having Mr. Thibodeaux testify at the trial. In view of this we do not feel that the trial court was in error in construing the ambi *990 guity in the stipulation in favor of the Town of Church Point. Cf. McKinley v. Dalton, 355 So.2d 1033 (La.App. 4th Cir. 1978).
In any event, if the depositions were ruled inadmissible, the result would be the same. The Carrieres agree that property in the area was worth seventy cents per square foot and produced evidence of their own purporting to prove that point. Their contention is that the frontage taken is worth more than seventy cents per square foot. We have already dealt with this argument. Under the circumstances the Town proved its case even without the testimony of Kirney Thibodeaux; therefore, if admission of his deposition was error, it was harmless error.
The remaining two assignments of error presuppose that the judgment of the trial court in fixing the value of the property was erroneous. We find no such error and do not reach these assignments of error.
The judgment of the trial court is affirmed. Appellants are assessed with the costs of this appeal.
AFFIRMED.
KING, J., concurs and assigns written reasons.

*991