MARVIN, Judge.
In this appeal arising out of the city’s expropriation of a strip of land from a 31-acre tract for the extension of a city street, both the city and the landowner complain of the trial court’s valuing the land at $60,000 per acre.
The city contends the land should have been valued at no more than $45,000 per acre, the city’s highest appraisal and the amount the city deposited in the court registry. The landowner contends the land should have been valued at what its appraiser suggested (more than $100,000 per acre), and seeks to increase the award. The litigants also contest, in various respects, the propriety and amount of the expert witness and attorney fee awards.
The landowner’s appraiser valued the strip taken as if it were a separate small tract and not as a part of the larger or parent 31-acre tract. An award founded on this method of appraisal, where both the part taken and the parent tract have the same highest and best use, is erroneous. State, Department of Highways v. Medica, 257 So.2d 450 (La.App. 3d Cir.1972); State, through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973).
Accordingly, we find that the award should not exceed $45,000 per acre and reverse the judgment. We render judgment rejecting the landowner’s demands.
FACTS
In early 1986, the city took 5.25 acres of an undeveloped 31-acre tract owned by Shreve Land Investors Partnership for the southerly extension of the Clyde Fant Parkway.[1] This rough sketch, drawn from a photograph in evidence, depicts the land taken, the parent tract, and the surrounding area:
*640 [[Image here]]
Before instituting this action, the city offered the landowner the higher of two appraisals ($236,250, based on $45,000 per acre) it obtained. The higher appraisal was made by Carl Sistrunk. The city’s second appraiser, Walter Hunter, who valued the land at $40,000 per acre, died while the action was pending. His report was reviewed and supplemented by another appraiser, James Young, who was hired by the city. Young agreed with the $40,000 per acre valuation made by Hunter.
According to the city’s experts, the highest and best use of the 31-acre tract was mixed commercial and multi-family residential. The landowner’s expert, Mark Montgomery, considered the highest and best use to be commercial because the 31-acre tract was zoned B-3 for commercial development. Each expert, however, *641 agreed that the highest and best use of the part taken and of the parent tract was the same.
Montgomery valued the part taken at $108,900 per acre ($571,725).
APPRAISAL METHODS USED
In a partial taking, unless the part taken has a highest and best use that is different than the parent tract, the part taken must be appraised as a proportionate part of the parent tract and not as a separate, smaller tract. State, Department of Highways v. Medica, supra; State, through Department of Highways v. Hoyt, supra.
The experts, using adjusted comparable sales to value the property, generally agreed that a smaller tract will sell for more per acre than a larger tract. Montgomery, the landowner’s appraiser, did not find that the part taken differed from the parent tract in potential use, but nevertheless adjusted the comparables he used to the five-acre part taken and not to the larger 31-acre tract. Montgomery did not attempt to determine the per-acre value of the 31-acre parent tract. Each of the city’s appraisers calculated the per-acre value of the parent tract and assigned that value to the part taken.
TRIAL COURT FINDINGS
The trial court found that the property was “desirable for multi-family and commercial uses,” as the city’s appraisers testified. The landowner contends the city’s experts “arbitrarily” assigned this highest and best use to the property in order to lower its value.
As shown on the above sketch, the developments in the area at the time of the taking in early 1986 included retail stores, small office buildings, apartments and townhomes. The city’s experts testified that commercial real estate activity in this immediate area began to decline in 1985. In their opinion, it was unlikely that the parent tract would have been used exclusively for commercial development, notwithstanding its zoning for that use, because of the market conditions in the area and because it was accessible only from Dee Street and not from the more commercially active and heavily traveled Knight Street.
The landowner’s claim that the “correct” highest and best use was entirely commercial because the property was zoned for commercial development is answered by Parish of East Baton Rouge v. Thomas, 346 So.2d 364 (La.App. 1st Cir.1977):
While it is evident that zoning classifications and restrictions are to be given serious consideration in determining the highest and best use of property, they are not determinative. When property is zoned for a use for which there is no reasonable expectation that the property may be so utilized, a lesser included use may be deemed, as here, to be the highest and best use for purposes of valuation. 346 So.2d at 366-367.
The record amply supports the trial court’s highest and best use finding.
The trial court, noting the “error” in Montgomery’s method of appraising the land taken as if it were a separate small tract instead of as a part of the larger parent tract, stated it would not “give as much weight” to Montgomery’s appraisal as to the appraisals of the city’s experts. The court found the land was worth $60,-000 per acre, or $315,000, and awarded the landowner $78,750, the difference between the court’s finding of value and the city’s $236,250 deposit.
Because Montgomery did not use the proper appraisal method for a partial taking, the city contends his appraisal should have been completely disregarded, and not merely discounted, by the trial court.
MONTGOMERY’S APPRAISAL
Of Montgomery’s 14 comparable sales, he excluded five from his analysis, explaining that three of the tracts were too small to be used as comparables (less than one acre), one was too large (88 acres), and one, of 20 acres, could not be verified because he could not locate the owner.
Five of his remaining nine comparables were tracts ranging in size from 1-4 acres, *642 three were tracts of 8-11 acres, and one was a 32-acre tract.
When Montgomery adjusted these nine sales for size in comparison to the “subject property,” he compared them to the five-acre tract taken instead of comparing them to the 31-acre parent tract. Using this approach, he adjusted the price per square foot in the three sales of more than 5 and less than 31 acres upward because smaller tracts generally sell for more per square foot than larger tracts. He acknowledged that he would have made downward adjustments for size had he compared these tracts to the 31-acre parent tract.
When Montgomery compared the 32-acre tract in one comparable to the five-acre tract taken, he adjusted the price per square foot upward by 35 percent based on the size difference. His adjustment for size obviously would have been negligible had he compared 32 acres to 31 acres. After making adjustments for size and other factors, he increased the initial sale price of $.86 per square foot, or $37,500 per acre, by 114 percent, to $1.84 per square foot, or $80,150 per acre.
The sale of the 32-acre tract appears in Young’s appraisal for the city. Young excluded 1.5 acres of unusable levee land and increased the base price per acre to $39,418 for the usable acreage. After adjustments of six percent for time, location and terrain, with no adjustment for size, Young’s per-acre value was $41,783 for this sale.
In his report, Montgomery found:
The subject property consisted of an irregular shape[d] tract of land containing approximately 5.25 acres and being taken from a whole tract, which contained approximately 31 acres.... The property contains all public utilities, including water and sewer facilities with the property as a whole containing street access ... (Our emphasis.)
Notwithstanding these findings of street and utility access in his report, Montgomery admitted at trial that the part taken, by itself, would not have access to streets, water or sewer lines, these being available only on Dee Street. The parent tract has over 900 feet of frontage on Dee Street. The part taken has no access to Dee Street except through the parent tract. Montgomery said he did not appraise the parent tract because he found no severance damages, and because, in his opinion, the owner of the parent tract “would have sold” some of the land fronting on Dee Street to provide access to Dee Street from the part taken.
The legal requirement that land partially taken be appraised as a proportionate part of the parent tract does not hinge on the existence of severance damages, nor on the hypothetical ease or difficulty of providing street and utility access to the part taken.
Although an exception to the requirement is recognized when the part taken is found to have a highest and best use different than the parent tract, Montgomery did not find any such difference. He admitted that his adjustments of comparable sales for size would have been different had he made his comparisons to the parent tract instead of the part taken. When he was asked what his opinion of “just compensation for the taking” would be if he had evaluated the land taken as part of a 31-acre tract, he answered, “I have no earthly idea at this point.”
Under these circumstances, Montgomery’s appraisal of the part taken as a separate tract simply has no probative value and is mere speculation. See and compare Medica and Hoyt, cited above; State v. Centuries Memorial Park Assn., 391 So.2d 489 (La.App. 2d Cir.1980); and Town of Church Point v. Carriere, 463 So.2d 986 (La.App. 3d Cir.1985).
OTHER EVIDENCE
The landowner who contests the adequacy of the estimate of just compensation in an expropriation action has the burden of proving that the land taken has a greater value than the amount deposited. State, Department of Highways v. McPherson, 259 So.2d 33 (La.1972). Finding that the landowner carried its burden of proof, notwithstanding the “error” in *643 Montgomery’s appraisal method, the trial court said:
At the time of expropriation, the subject 32-acre (sic) tract was cleared, basically level, and well drained, with access to all public utilities and services. It had frontage on Dee Street and the Shreveport-Barksdale service road_ The surrounding area contains significant commercial and residential development. The appraiser’s reports indicate that the neighborhood is a stable community, desirable for multi-family and commercial uses.
Each of these favorable features was recognized by the city’s appraisers.
In its reasons, the trial court discussed two sales and one option to purchase land, all on nearby Knight Street:
Sale of 11-acre tract for $77,500 per acre, used by Montgomery;
Sale of 10-acre tract for $91,000 per acre, used by Young, and included with an adjoining tract as part of a 30-acre tract by Hunter and Sistrunk; and Option to buy parcels from 43-acre tract at $60,000 per acre for less than five acres and $50,000 per acre for five acres or more, used by Young.
Montgomery erroneously adjusted the price of the 11-acre tract upward for size because it was about twice the size of the part taken. He agreed that his adjustment for size would have been downward by 22-23 percent instead of upward by 15 percent had he compared the 11-acre tract to the 31-acre parent tract. Young testified that he decided against using this sale as a comparable because the land and the existing apartment complex (The Nest) had been separately owned for a number of years and the sale of the land was made to consolidate ownership of the land and the improvements.
The 10-acre tract in the second sale mentioned by the trial court, about one-third the size of the parent tract, was the last parcel of land to be sold in a heavily developed area of Knight Street. According to Young, its adjusted value was about $53,-000 per acre. When this tract, sold in 1985, was included with an adjoining 20-acre tract sold by the same owner m 1983, the adjusted per-acre value of the combined 30 acres was $38,400 according to Hunter.
Sistrunk also combined these two tracts for an initial value of about $48,000 per acre. He made a small upward adjustment for time appreciation and small downward adjustments because this tract was superi- or to the subject property in location and accessibility. He did not state an adjusted per-acre value for the combined tract, but said:
These adjustments were all very small because, as you can see, this property sold for just under $48,000 an acre and we evaluated the subject at $45,000 per acre, even with the superiorities that this [30-acre] property had.
The third transaction mentioned by the trial court was the option to purchase parcels from a 43-acre tract. Young included the option in his report for information purposes but did not include it in his adjusted comparables. In any event, an option to purchase parcels of five acres or more for $50,000 per acre, in a nearby, but more commercially active, area, does not reasonably support the trial court’s valuation of 31 acres at $60,000 per acre.
The trial court’s prerogative to weigh varying expert testimony and to reach a value that does not coincide with the testimony of any expert witness may be exercised only when there is evidence in the record to reasonably support the court’s valuation. See and compare State, Dept. of Highways v. Thurston, 338 So.2d 154 (La.App. 2d Cir.1976), writ denied, and State, Department of Highways v. Talbot, 271 So.2d 605 (La.App. 1st Cir.1972).
Here, the only evidence to support the trial court’s valuation is Montgomery’s ill-founded appraisal which should not have been given any weight, as we have explained. Of the three “comparables” mentioned by the trial court to support its valuation, the option was not adjusted at all, one sale was used only by Montgomery and was incorrectly adjusted, and the other sale of 10 acres on Knight Street was superior in location and accessibility and its *644 adjusted per-acre value was $53,000 according to Young, and $5,000-15,000 per acre less than that when it was included with adjoining land in a tract nearly equal in size to the parent tract. These “compara-bles” cannot and do not factually support the trial court’s valuation of the property at $60,000 per acre.
We find that Sistrunk’s appraisal, the basis for the city’s deposit, was reasonable and was grounded on comparables that, with adjustments, were material indicators of the value of the property taken. On this record, the landowner has not proven its entitlement to compensation above the amount deposited by the city. See and compare State, Department of Highways v. Talbot and State v. Centuries Memorial Park Assn., cited supra.
DECREE
At the landowner’s cost, the judgment is reversed. Judgment is hereby rendered rejecting the landowner’s demands.
REVERSED AND RENDERED.

. One of the five partners filed bankruptcy proceedings after the city obtained the expropriation order. The trustee appeared in the action by answering the city's petition to claim 20 percent of any additional compensation awarded to the landowner, plus attorney fees. The judgment recognizes the trustee’s share of the additional compensation and awards attorney fees to the trustee and the landowner. The trustee and the landowner separately answered the appeal seeking an increase in the compensation award and additional attorney fees for the appeal. Because they make the same arguments in opposition to the city’s appeal, we refer to them simply as the landowner.